UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. |
| JOHN J. DIEHL, JR., | ) ) ) |
| Defendant. | ) |

### GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

### 1. PARTIES:

The parties are the defendant, John J. Diehl, Jr., represented by defense counsel John Rogers, and the United States of America (hereinafter "United States" or "Government"), represented by Assistant United States Attorney Hal Goldsmith and the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Count 1 of the Information, the United States agrees that no further federal prosecution will be brought in this District relative to the defendant's fraudulent conduct and his fraudulent conduct in obtaining funds under the 2020 CARES Act, as set forth in the Information and of which the Government is aware at this time.

1

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

**3. ELEMENTS:**

As to Count 1, Wire Fraud, the defendant admits to knowingly violating Title 18, United States Code, Section 1343, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

1. Defendant voluntarily and intentionally devised or participated in a scheme to defraud and to obtain money by means of materially false or fraudulent pretenses or representations from the United States, through the Small Business Administration pandemic relief program, as detailed in the Information;

2. The pretenses or representations were material, that is, they would reasonably influence a person to part with money;

3. Defendant did so with the intent to defraud; and,

4. In advancing, or furthering, or carrying out her scheme to defraud and to obtain money by means of false or fraudulent pretenses or representations, Defendant used or caused to be used an interstate wire communication in furtherance of, or in an attempt to carry out, some essential step in the scheme.

## 4. FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

As a result of the COVID-19 pandemic, and to help support small businesses, in March 2020, Congress passed the CARES Act that, among other things, provided funds for two new Small Business Administration (hereinafter referred to as "SBA") pandemic relief programs, including the Economic Injury Disaster Loan (hereinafter referred to as "EIDL"). The EIDL program was a pandemic relief program managed by the SBA in which small businesses could apply for deferred, low interest loans to be used strictly for working capital, payroll, and other fixed debts of the business caused by the Pandemic in 2020.

The Diehl Law Group, LLC (hereinafter referred to as "Diehl Law Group") was a law firm with its office located in St. Louis, Missouri. The Defendant, John J. Diehl, Jr. (hereinafter referred to as "**DIEHL**") was the sole owner and operator of Diehl Law Group, which had no other employees.

Beginning in or about March 2020 and continuing through in or about February 2024, **DIEHL** devised, intended to devise, and knowingly participated in a scheme to defraud and for obtaining money and property from The United States of America Small Business Administration, in an approximate amount of $379,900.00, by means of materially false and fraudulent pretenses, representations, and promises.

On March 30, 2020, **DIEHL**, on behalf of his Diehl Law Group, submitted an online loan application to the SBA seeking an EIDL loan for pandemic-related economic assistance. In

connection with that application, **DIEHL** electronically signed a SBA "Loan Authorization and Agreement" form in which he falsely represented and certified that Diehl Law Group "...will use all the proceeds of this Loan solely as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020 and continuing thereafter...."

On April 16, 2020, an advance of $1,000.00 relative to the EIDL loan application was approved and, on April 21, 2020, was funded by the SBA, and $1,000.00 was then electronically transmitted by wire from the United States Treasury into the Diehl Law Group, LLC, dba Outside GC Services bank account ending in 2494 at UMB Bank (hereinafter referred to as "Diehl Law Group Bank Account"). On April 27, 2020, **DIEHL** made a payment of $1,320.15 to a country club, which impermissibly included the recently deposited EIDL loan advance of $1,000.00.

On June 6, 2020, the EIDL loan application was approved and, on June 9, 2020, was funded by the SBA, and $93,900.00 was then electronically transmitted by wire from the United States Treasury into the Diehl Law Group Bank Account. Following receipt of the EIDL loan proceeds, **DIEHL** transferred some of the funds from the Diehl Law Group Bank Account to his personal bank accounts. Between June 10, 2020 and August 16, 2021, **DIEHL** impermissibly used the EIDL loan proceeds for unauthorized personal use and purposes, unrelated to working capital for Diehl Law Group. The impermissible personal use and purposes included, but were not limited to, payments on personal Tesla, Audi and Jeep automobiles, payments on personal credit cards, payments on a personal residence mortgage, payments for a family member's college tuition, payments for a pool maintenance company, payments for country club dues and fees, and cash withdrawals for personal use and expenses. Additionally, on September 16, 2020, **DIEHL** impermissibly transferred $50,039.55 of the EIDL loan proceeds to the Diehl Law Group Defined

Benefit Plan at Fidelity Investment Company. **DIEHL** was the only participant in the Defined Benefit Plan.

During March, 2022, **DIEHL**, again on behalf of Diehl Law Group, requested an EIDL loan modification from the SBA for pandemic-related economic assistance. On April 6, 2022, in connection with that application, **DIEHL** electronically signed a SBA "Amended Loan Authorization and Agreement" form in which he falsely represented and certified that Diehl Law Group "…will use all the proceeds of this Loan solely as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020 and continuing thereafter…."

On April 6, 2022, the EIDL loan modification application was approved and, on or about April 12, 2022, was funded by the SBA, and $285,000.00 was then electronically transmitted by wire from the United States Treasury into the Diehl Law Group Bank Account. Following receipt of the EIDL modified loan proceeds, **DIEHL** transferred some of the funds from the Diehl Law Group Bank Account to his personal bank accounts. Between April 14, 2022 and June 21, 2023, **DIEHL** impermissibly used the EIDL modified loan proceeds for unauthorized personal use and purposes, unrelated to working capital for Diehl Law Group. The personal use and purposes included, but were not limited to, payments on personal credit cards, payments of legal fees relative to a personal legal matter, payments for a family member's college tuition, payments on a personal residence mortgage, and cash withdrawals for personal use and expenses. Additionally, on September 16, 2022, **DIEHL** impermissibly transferred $150,000.00 of the EIDL modified loan proceeds to the Diehl Law Group Defined Benefit Plan at Fidelity Investment Company, of which **DIEHL** was the sole participant.

On or about April 12, 2022, for the purpose of executing his scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, and representations, **DIEHL** knowingly caused to be transmitted by means of wire communication in and affecting interstate commerce by the SBA Denver Finance Center located in Denver, Colorado payment information through the FMS system in Sterling, Virginia to the United States Treasury Department which electronically transmitted $285,000.00 in EIDL loan funds to the Diehl Law Group LLC Bank Account at UMB Bank in Missouri, which funds Defendant later used for personal use and purposes unrelated to the working capital of the Diehl Law Group.

## 5. STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for each of the crimes to which the defendant is pleading guilty is imprisonment of not more than Twenty (20) years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than Three (3) years.

## 6. U.S. SENTENCING GUIDELINES: 2024 MANUAL:

The defendant understands that these offenses are affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

a. **Chapter 2 Offense Conduct:**

**(1) Base Offense Level:** The parties agree that the base offense level is Seven (7), as found in Section 2B1.1(a)(1).

(2) **Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply:

    i. Twelve (12) levels are added pursuant to Section 2B1.1(b)(1)(G), as the loss was more than $250,000, but less than $550,000.

    ii. Two (2) levels are added pursuant to Section 2B1.1(b)(12) as the fraudulent offense conduct was connected with major disaster or emergency benefits.

    b. **Chapter 3 Adjustments:**

    (1) **Acceptance of Responsibility:** The parties agree that Three (3) levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

    c. **Other Adjustments:** The parties agree that the following additional adjustments apply: A two (2) level adjustment pursuant to U.S.S.G. Section 4C1.1(a).

    d. **Estimated Total Offense Level:** The parties estimate that the Total Offense Level is Sixteen (16).

    e. **Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the

7

finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

    **f.** **Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

**7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

    **a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

    **(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

    **(2) Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than

Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

b. **Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

c. **Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

8. **OTHER:**

a. **Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

b. **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

c. **Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the

defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished

   d. **Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

   e. **Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

   f. **Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment.

   g. **Forfeiture:** The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. The defendant agrees

10

the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional and statutory challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument. The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees that said items may be disposed of by law enforcement officials in any manner.

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives her rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance

of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. **VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in

this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except

where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

September 11, 2025
Date

_____
HAL GOLDSMITH
Assistant United States Attorney

9/11/25
Date

_____
JOHN J. DIEHL, JR.
Defendant

9/11/25
Date

_____
JOHN ROGERS
Attorney for Defendant

14