# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) |
| v. | ) Case No.: 4:25-CR-00483-SEP ) |
| JOHN J. DIEHL, JR., | ) ) |
| Defendant. | ) ) |

## SENTENCING MEMORANDUM

COMES NOW Defendant John J. Diehl, Jr., through undersigned counsel, and hereby files the following memorandum for sentencing:

### I. Background

On September 11, 2025, Defendant Diehl pled guilty to a one count Information. Count 1 charged Wire Fraud, in violation of 18 U.S.C. § 1343, pursuant to the written plea agreement. *See* Presentence Report ("PSR"), ¶ 1, 2. The United States Sentencing Guidelines (USSG) Total Offense Level analysis agreed to by the parties is the result of negotiation and led, in part, to the guilty plea. PSR, ¶ 3. The parties have agreed that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and 18 U.S.C. § 3553(a). *Id*.

The parties agreed that the Base Offense Level is 7, as found in USSG §2B1.1(a)(1). *Id*. The parties further agreed that twelve (12) levels should be added pursuant to USSG §2B1.1(b)(1)(G) as the loss was more than $250,000, but less than $550,000. The parties further agreed that two (2) additional levels should be added pursuant to §2B1.1(b)(12) as the offense conduct was connected with major disaster or emergency benefits. PSR, ¶ 4. However, the

defendant meets the criteria at USSG §4C1.1(a). The defendant is a Zero-Point Offender, and the offense level is reduced by two. PSR, ¶ 6.

The Government will also recommend a total three-level reduction for acceptance of responsibility upon motion of the Government stating Defendant has assisted authorities in the investigation or prosecution of the misconduct by timely notifying authorities of his intention to enter a plea of guilty, pursuant to USSG §3E1.1(a) and USSG §3E1.1(b), respectively. PSR, ¶ 5.

The parties estimate the Total Offense Level is 16, which is consistent with the calculation in the PSR. PSR, ¶¶ 9, 37. Defendant's Total Criminal History score is 0, which establishes a Criminal History Category of I, according to the sentencing table in USSG Chapter 5, Part A. PSR, ¶ 42. Based upon a Total Offense Level of 16 and a Criminal History Category of I, the guideline imprisonment range is 21 to 27 months. PSR, ¶ 75. For the reasons detailed in this memorandum, Defendant Diehl respectfully suggests that a noncustodial sentence will best serve the statutory purposes of sentencing.

**II.    Sentencing Rules**

Title 18 U.S.C. § 3553(a) requires this Court to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing. There are four purposes of sentencing[1] and six factors to consider in connection with them.[2] The guidelines are only one

---

[1] The purposes of sentencing are:
  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
  (B) to afford adequate deterrence to criminal conduct;
  (C) to protect the public from further crimes of the defendant; and
  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.
18 U.S.C. §3553(a)(2)(A)-(D).

[2] The factors to consider in connection with the purposes of sentencing are:
  (A) the nature and circumstances of the offense and the history and characteristics of the defendant;
  (B) the kinds of sentences available;
  (C) the guidelines promulgated by the Sentencing Commission;

factor to consider and deserve no greater weight than any other factor. *See Kimbrough v. United States*, 552 U.S. 85, 90 (2007). Thus, this Court may not presume a sentence within the guideline range as reasonable. *See Rita v. United States*, 551 U.S. 338, 351 (2007). Nor may it presume a sentence outside the guideline range unreasonable. *See Gall v. United States*, 552 U.S. 38, 51 (2007). Furthermore, this Court may not require "extraordinary circumstances" to justify a sentence below the guidelines nor "use a rigid mathematical formula to determin[e] the strength of the justification required for a specific sentence." *Id.* at 47. These rules apply regardless of whether the guideline derives from the Unites States Sentencing Commission ("the Commission") or a policy determination of Congress. *See Kimbrough*, 552 U.S. at 109-10.

### III. Diehl's History and Characteristics

Defendant John Diehl was born in August 1965, in Saint Louis, Missouri, to John Diehl, Sr., age 84, and Carol Diehl (nee Burch), age 81. PSR, ¶ 45. The defendant's father suffers from Alzheimer's disease, and his mother is showing symptoms of dementia. *Id.* His parents reside at Meramec Bluffs Senior Living Community in Ballwin, Missouri. The defendant has two sisters who both live in Missouri. He has a close relationship with both. *Id.*

The defendant was raised by both his parents where he experienced a good childhood. His father was employed as a buyer for Schnucks grocery stores and his mother stayed home to care for their children. Between the ages of 13 and 14, the defendant was the victim of sexual abuse perpetrated by a Catholic priest, Russell Obmann, deceased. Obmann was publicly accused by the archdiocese in July 2019, the allegations of sexual abuse were substantiated, and Obmann was removed from ministry.

---

(D) any pertinent policy statement issued by the Sentencing Commission;
(E) the need to avoid unwarranted sentencing disparities among similarly situated defendants; and
(F) the need to provide restitution to any victims of the offense.
18 U.S.C. §3553(a)(1)-(7).

3

Defendant Diehl had a brief relationship with Nancy Avioli, age 57, of Chesterfield, Missouri. PSR, ¶ 46. They had one son. Their son graduated from West Point in 2015 was a United States Army pilot. He was found deceased in his home after committing suicide in 2016. The loss was traumatic for the entire family. *Id.* In 2001, Defendant Diehl married Kelly Diehl (nee Brown), age 61. PSR, ¶ 47. She has one son, age 30, from a previous relationship who resides in Georgia. They have one son, age 23, together. *Id.*

The defendant is 6 feet tall and weighs 220 pounds. PSR, ¶ 49. The defendant has been diagnosed with high blood pressure and is treated for hypertension. PSR, ¶ 50. He has a history of seizures but has not had one in the last two years. *Id.* He participated in grief counseling after the death of his son but has no history of treatment for any other mental health condition. PSR, ¶ 51.

Defendant Diehl graduated from De Smet Jesuit High School in Saint Louis, Missouri, in 1983. PSR, ¶ 53. From 1983 until 1986, he attended Washington University in Saint Louis, Missouri. In 1986, he transferred to University of Missouri-Columbia in Columbia, Missouri and graduated in 1987 with a bachelor's degree in political science. PSR, ¶ 54. In 1991, he graduated with a Juris Doctor degree from Saint Louis University. PSR, ¶ 55.

The defendant has always been employed and supported himself and his family. PSR, ¶ 65. Since he graduated with his law degree in 1991, he has been employed as a real estate attorney. PSR, ¶ 64. Until September 2025, he was working for Diehl Law Group, LLC, Environmental Operations, and Missouri Cobalt, LLC, all located in Saint Louis. PSR, ¶¶ 60-62.

### IV. The Nature of the Offense

On September 11, 2025, Defendant Diehl pled guilty to one count of Wire Fraud. PSR, ¶ 1. According to investigative records provided by the government, beginning on or about March

4

2020, and continuing through about February 2024, within the Eastern District of Missouri, John Diehl devised, intended to devise, and knowingly participated in a scheme to defraud the United States of America Small Business Association (SBA) of approximately $379,900.00 by means of materially false and fraudulent pretenses, representations, and promises. PSR, ¶ 14. As part of the offense conduct, the defendant on behalf of The Diehl Law Group submitted online application(s) and/or modification(s) to the SBA seeking Economic Injury Disaster Loans (EIDL) for pandemic related economic assistance. Defendant Diehl used the EIDL funds for personal use unrelated to the working capital of his law practice, as the loan terms required. On October 24, 2024, the government filed a restitution questionnaire in the amount of $379,900 owed to the SBA. PSR, ¶ 23. The defendant paid the restitution in full. *Id.* On September 11, 2025, the defendant self-surrendered to the United States Marshals Services in Saint Louis, Missouri. PSR, ¶ 22.

    **V.    Defendant Diehl's Payment of Restitution in Full in Advance of Sentencing Merits Consideration in Determining a Minimally Sufficient Sentence Here**

Extraordinary restitution can provide a basis for a departure or guideline variance. See, e.g., *U.S. v. Hairston,* 96 F.3d 102, 108 (4th Cir. 1996). Courts have held that cases fall outside of the heartland when there were extraordinary efforts at restitution and have varied downward in sentencing when defendants have paid back all, or substantial amounts, of restitution before being charged or sentenced. *U.S. v. Oligmueller,* 198 F.3d 669, 672 (8th Cir. 1999); *U.S. v. Robson,* 2007 WL 4510259 (N.D. Ohio Dec. 18, 2007). See also *U.S. v. Curry,* 523 F.3d 436 (4th Cir. 2008) (court varied down to reflect defendant's attempted restitution) and *U.S. v. Kim,* 364 F.3d 1235 (11th Cir. 2004) (downward departure for liquidating 75% of life savings and voluntarily undertaking enormous debt to pay restitution).

5

Here, Defendant Diehl has paid back his restitution in full, in the amount of $379,900.00, to the Small Business Administration, prior to sentencing. His significant acceptance of responsibility in making a full payment of restitution suggests that a non-custodial sentence is sufficient, but not greater than necessary, to comply with the statutory purposes of sentencing here.

### VI. Diehl's Personal Circumstances Should Be Considered in Reaching a Minimally Sufficient Sentence

The Sentencing Guidelines specifically authorize a court to consider "the history and characteristics of the defendant" when determining whether a sentence is sufficient, but not greater than necessary, to comply with the purposes of § 3553(a). 18 U.S.C. § 3553(a)(1). This includes consideration of a defendant's education and vocational skills, mental and emotional conditions, and physical condition, including drug or alcohol dependence or abuse. U.S.S.G. §§ 5H1.2-4; *see United States v. Almenas*, 553 F.3d 27, 37 (1st Cir. 2009) (affirming sentence where district court considered defendant's history and circumstances, including his physical and mental condition); *see also United States v. Feemster*, 435 F.3d 881, 884 (8th Cir.2006) (agreeing that the history and characteristics of the defendant are appropriate considerations in sentencing outside the guidelines).

Here, Defendant Diehl's history and characteristics, including his age and family support and that this is his first felony conviction and potential term of incarceration, support a sentence below the guidelines range. Sentencing courts have considered factors such as strong family support and community ties in varying downward. *See United States v. Sayad*, 589 F.3d 1110, 1118 (10th Cir. 2009) (downward variance to five years of probation for racketeering, in part, because defendant came from a close-knit family and community and was, therefore, a good candidate for rehabilitation); *United States v. Wachowiak*, 412 F. Supp. 2d 958, 964 (E.D. Wis.

6

2006), *aff'd,* 496 F.3d 744 (7th Cir. 2007) (imposing a sentence below the guidelines, in part, because of the strong family support defendant enjoyed, which would aid in his rehabilitation and re-integration into the community); *United States v. Beiermann*, 599 F. Supp. 2d 1087, 1110 (N.D. Iowa 2009) (considering the show of support from defendant's family, suggesting he will have support in his efforts at rehabilitation, in granting a motion for downward variance).

Defendant Diehl has the strong support of his family. He has a good relationship with his parents, wife, sisters, and children, and is needed for help in caring for his aging and memory-challenged parents. PSR at ¶ 45. These personal characteristics

## VII. Defendant Diehl Poses a Reduced Risk of Recidivism

United States Sentencing Commission data support the conclusion that Defendant Diehl poses a reduced risk of recidivism, as compared with other offenders, and suggest that a sentence variance that minimizes any sentence of incarceration is appropriate in this case. *See e.g.,* U.S. Sentencing Comm'n, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* 16 (May 2004), *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf (hereinafter "Measuring Recidivism"). The criminal history measure of the guidelines estimates the likelihood of recidivism based on two offender characteristics: prior convictions and prior terms of incarceration. *See* U.S.S.G. §4A1.1 The United States Sentencing Commission's 15-year report, however, concludes that the measure's predictive power would improve if it incorporated additional offender characteristics. *See Measuring Recidivism* at 16.

Recidivism rates decline consistently as the defendant's age increases. *Id.* at 12, 28. Offenders between 21 and 25 years old recidivate at a rate of 31.9%. *Id.* at 28. In comparison,

offenders with a criminal history category I over the age of 50 recidivate at the rate of 6.2%. *Id.* Defendant Diehl is currently 60 years old. PSR Identifying Data.

Employment also corresponds to a reduced risk of recidivism. Criminal history category I defendants who were employed in the year prior to the instant offense recidivate at a rate of 12.7%, while those who were unemployed in the year prior to the instant offense recidivate at a rate of 20.6%. *Id.* at 29. Defendant Diehl is the sole owner and operator of Diehl Law Group LLC in St. Louis, Missouri since about 2015. PSR ¶ 62. He was also employed as general counsel at Environmental Operations in Saint Louis since 2017 and as Special Projects Executive at Missouri Cobalt LLC since 2024. PSR ¶¶ 60-61.

Educational attainment correlates with lower recidivism rates. *See Measuring Recidivism* at 12, 29. Criminal history category I offenders who have not graduated from high school recidivate at a rate of 21.3%. *Id.* at 29. Those who have graduated from college recidivate at a rate of 7.1%. *Id.* Defendant graduated from University of Missouri-Columbia in Columbia, Missouri with his bachelor's degree in 1987 and earned his law degree from Saint Louis University in 1991. PSR ¶¶ 54-55.

Additional United States Sentencing Commission data support the conclusion that, as a first offender with no prior contacts with the criminal justice system, Defendant poses a further reduced risk of recidivism, as compared with other category I offenders, and suggest that a sentencing variance that minimizes Defendant's potential sentence of incarceration is appropriate in this case. *See e.g.*, U.S. Sentencing Comm'n, *Recidivism And The "First Offender"* (May 2004), *available at* http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_First_Offender.pdf (hereinafter "*First Offender Report*"); *United States v. Tomko*, 562 F.3d 558, 571 (3d Cir. 2009) (upholding a

8

sentence of one year home detention, restitution, community service, and a fine for tax evasion instead of the Guideline's 12-18-month sentence recommendation because of defendant's negligible criminal history, employment record, community ties, and extensive charitable works). The Guidelines deem "first offenders" generally less culpable and less likely to re-offend than all other offenders. *See First Offender Report* at 1. The Guidelines broadly define "first offenders" as offenders who have no prior convictions or incarcerations. *Id*; *see also* U.S.S.G. §§ 4A1.1; *See also* Paul J. Hofer & Mark H. Allenbaugh, *The Reason Behind the Rules: Finding and Using the Philosophy of the Federal Sentencing Guidelines*, 40 Am. Crim. L. Rev. 19, 24 (2003). The Commission has recognized, however, that consideration of additional factors will better identify those first offenders who prove *least* culpable, *least* likely to re-offend, and therefore *most deserving* of the leniency recommended by 18 U.S.C. § 994(j); *First Offender Report* at 1. In an ongoing effort to do so, the Commission divided "first offenders" with no criminal history points into three categories: those with (A) no prior arrests, (B) prior arrests but no prior convictions, or (C) prior convictions counted under U.S.S.G. § 4A1.2(c)(2) only. *Id.* at 5. It then collected and analyzed data about the characteristics of offenders in each of the three categories. *See id.* It concluded that:

> From both culpability and recidivism risk perspectives, group A offenders, with no prior arrests, most strongly meet the conceptual definition of the first offender category. Offenders in group A have had no recorded contact with the criminal justice system prior to their instant federal offense. Moreover, as indicated by their extremely low recidivism rate, 6.8%, they are easily the most empirically identifiable group of guideline federal offenders who are the least likely to re-offend.

*Id*. at 17.

The Commission noted it was important that "the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant

9

is a first offender who has not been convicted of a crime of violence or an otherwise serious offense." 28 U.S.C. § 994(j). Defendant Diehl has no history of an arrest prior to commission of the instant offense, so he falls within group A—first offenders who are least likely to reoffend. PSR at ¶ 40.

    These factors indicate that the Defendant poses a low risk of recidivism and, as such, is a good candidate to receive a sentence that minimizes any term of incarceration, because such a sentence would not be necessary to achieve the purposes of sentencing.



### IX.   Conclusion

For the foregoing reasons, Defendant Diehl respectfully suggests that a noncustodial sentence will best serve the statutory purposes of sentencing in this case.

                                          Respectfully submitted,

                                        ROGERS SEVASTIANOS & BANTE, LLP

By:       /s/ *John P. Rogers*
            JOHN P. ROGERS, 38743MO
            120 S. Central Avenue, Suite 160
            Clayton, Missouri 63105
            (314) 354-8484
            Facsimile (314) 354-8271
            jrogers@rsblawfirm.com
            Attorney for Defendant Diehl

## CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2026, the foregoing was electronically filed with the Clerk of the Court to be served via CM/ECF upon Hal Goldsmith, Assistant United States Attorney.

/s/ John P. Rogers